**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

MSP RECOVERY CLAIMS, SERIES LLC,
a Delaware entity,

      Plaintiff,                    CASE NO. _____

v.

AIG PROPERTY CASUALTY COMPANY
a Foreign Profit Corporation,

      Defendant.
_____/

## NOTICE OF REMOVAL

      PLEASE TAKE NOTICE that Defendant AIG Property Casualty Company ("AIGPCC")
hereby removes to this Court the state court action described below pursuant to 28 U.S.C. §§
1331, 1332, 1367, 1441, and 1446.  This Court has jurisdiction over said action on the basis of (i)
the Class Action Fairness Act ("CAFA"), (ii) traditional diversity jurisdiction, and (iii) federal
question jurisdiction.

### BACKGROUND

      1.      On August 4, 2017, Plaintiff MSP Recovery Claims, Series LLC filed a putative
class action complaint in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-
Dade County, Florida, styled *MSP Recovery Claims, Series LLC v. AIG Property Casualty
Company*, Case No. 2017-018966-CA ("Complaint").

      2.      On October 2, 2017, the Chief Financial Officer of the State of Florida
Department of Financial Services received the summons and Complaint, which were forwarded
to AIGPCC's designated agent for service of process on October 4, 2017.  The summons and

113223869.1

Complaint, along with copies of all other process, pleadings, and orders from the state court action are attached hereto as composite Exhibit A pursuant to 28 U.S.C. § 1446(a).

3.     Section 1441(a) provides that "[e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).  Venue in this Court is proper under 28 U.S.C. § 1441(a) and Local Rule 3.1 because (i) this action is being removed from the state court in which it was originally filed, the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, which sits within the Southern District of Florida, and (ii) the Complaint alleges that the cause of action accrued in Miami-Dade County, Florida.  *See* Compl. ¶ 13.

## I.     THIS COURT HAS JURISDICTION PURSUANT TO CAFA

4.     This Court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(d), the codification of CAFA.

5.     CAFA confers jurisdiction upon federal district courts over class actions in which: (1) any plaintiff class member is diverse in citizenship from any defendant; (2) there are at least 100 proposed plaintiff class members; and (3) the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.  *See* 28 U.S.C. § 1332(d).  CAFA authorizes removal of such actions pursuant to 28 U.S.C. § 1446.

6.     As a threshold matter, this action is a proposed "class action" as defined by CAFA because it is a case brought by a representative of a putative class and was filed in state court pursuant to a statute or rule authorizing such a class.  *See* 28 U.S.C. § 1332(d)(1)(B). Specifically, Plaintiff brings its claims under Florida Rule of Civil Procedure 1.220(a), which

113223869.1

authorizes class actions, and represents that it brings this lawsuit against AIGPCC "both individually and . . . on behalf of a Class" of all others similarly situated seeking damages, attorneys' fees, costs, and interest.  Compl. ¶ 23.

7.     As demonstrated below, all of the remaining requirements for CAFA jurisdiction are met here.  Further, to the extent there is any doubt whether the CAFA requirements are met, it is clear from both Supreme Court precedent and CAFA's legislative history that such doubts should be resolved in favor of federal jurisdiction.  *See, e.g.*, *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014) (holding that "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court"); S. Rep. 109-14, at 43 (2005) ("Overall, [CAFA] is intended to expand substantially federal court jurisdiction over class actions.  Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant."); *id*. at 35 (explaining that the intent of CAFA "is to strongly favor the exercise of federal diversity jurisdiction over class actions with interstate ramifications[]").  Indeed, the Eleventh Circuit has recognized that, in light of the Supreme Court's holding in *Dart*, courts can "no longer rely on any presumption in favor of remand in deciding CAFA jurisdictional questions."  *Dudley v. Eli Lilly & Co.*, 778 F.3d 909, 912 (11th Cir. 2014).

### A.     CAFA's Diversity-of-Citizenship Requirement Is Met

8.     Under CAFA, the requisite diversity of citizenship is satisfied as long as there is "minimal diversity," which exists if "*any* member of a class of plaintiffs is a citizen of a State different from any defendant."  28 U.S.C. § 1332(d)(2)(A) (emphasis added); *see also Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1163 (11th Cir. 2006) (stating that "[u]nder CAFA, federal

3

courts now have original jurisdiction over class actions in which . . . there is minimal diversity (at least one plaintiff and one defendant are from different states)").

9.      Plaintiff, a limited liability company, "is a Delaware entity with its principal place of business located at 5000 S.W. 75th Avenue, Suite 400, Miami, FL 33155." Compl. ¶ 9.  Thus, under CAFA, Plaintiff is a citizen of both Florida and Delaware.[1]

10.     AIGPCC is incorporated under the laws of Pennsylvania and its principal place of business is located in New York.  *See* Exhibit B.  Therefore, AIGPCC is a citizen of Pennsylvania and New York.  *See* 28 U.S.C. § 1332(c)(1).

11.     Based on Plaintiff's Florida and Delaware citizenship and AIGPCC's Pennsylvania and New York citizenship, CAFA's minimal diversity requirement has been met. *See* 28 U.S.C. § 1332(d)(2).

**B.      The Purported Class Consists Of More Than 100 Members**

12.     Although AIGPCC does not agree that Plaintiff has defined a proper class or that a class can be defined or maintained, Plaintiff's alleged class definition makes clear that the proposed class would include at least 100 members, thus satisfying this requirement of 28 U.S.C. § 1332(d)(5)(B).

13.     Plaintiff's definition of the purported class is in Paragraph 27 of the Complaint. That paragraph defines Plaintiff's purported class as consisting of:

>  entities that:

>>  contracted directly with CMS and/or its assignee pursuant to Medicare Part C including, but not limited to, MAOs, and other similar entities, to provide Medicare

---

[1] Under CAFA, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized."  28 U.S.C. § 1332(d)(10).  For purposes of CAFA, a limited liability company is considered to be an "unincorporated association."  *See Ferrell v. Express Check Advance of S.C. LLC*, 591 F.3d 698, 699-700 (4th Cir. 2010) (holding that "for purposes of determining subject matter jurisdiction under [CAFA], a limited liability company is an 'unincorporated association' as that term is used in 28 U.S.C. § 1332(d)(10)").

benefits through a Medicare Advantage plan to Medicare beneficiaries for medical services, treatment, and/or supplies as required and regulated by CMS and HHS, all of which pertain to the same medical services and/or supplies that were the primary obligation of the Defendant;

have made payment(s) of benefits, services, and/or supplies whereby the MAO, as a secondary payer, has the direct right and responsibility to collect for covered Medicare services, for which the Defendant, as the primary payer pursuant to Defendant's contract covering the Medicare enrollee and Florida no-fault law (section 627.736(4), Florida Statutes), was/is financially responsible to a Medicare beneficiary; and

have not been reimbursed by Defendant pursuant to the recognized Current Procedure Terminology codes based on the fee-for-service by the primary payer, as delineated by section 627.736, Florida Statutes, for medical services and/or supplies for their damages.

Compl. ¶ 27.

14.     Pursuant to Medicare Part C, Medicare beneficiaries have the option to receive Medicare benefits through private insurers such as Medicare Advantage Organizations ("MAOs").  *See* 42 U.S.C. § 1395w-21.  According to data prepared by the Centers for Medicare & Medicaid Services ("CMS"), as of October 2017, there were 674 MAOs throughout the United States that had contracted with CMS pursuant to Medicare Part C to provide Medicare benefits through a Medicare Advantage plan to Medicare beneficiaries.  *See* Exhibit C.[2]   Because Plaintiff's class definition, which AIGPCC reserves the right to challenge, includes any entity that (i) contracted with CMS pursuant to Part C to provide Medicare benefits through a Medicare Advantage plan to Medicare beneficiaries; (ii) made payments of benefits, services, or supplies for a Medicare enrollee that also was covered by Florida no-fault automobile insurance coverage

---

[2] The information in the attached exhibit has been formatted to include only information that is relevant to the number of MAOs offering Medicare Part C plans in order to streamline the printed version.  A full and complete version of Exhibit C is available at https://www.cms.gov/Research-Statistics-Data-and-Systems/Statistics-Trends-and-Reports/MCRAdvPartDEnrolData/MA-Plan-Directory-Items/MA-Plan-Directory.html?DLPage=1&DLEntries=10&DLSort=1&DLSortDir=descending.     In determining   CAFA jurisdiction, the Court is permitted to examine a wide range of materials, such as the notice of removal, non-sworn letters, declarations, or "other documentation."  *See Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754-55 (11th Cir. 2010).  As such, it is appropriate for this Court to consider data and information prepared by CMS.

issued by AIGPCC; and (iii) has not been reimbursed by AIGPCC for those payments, all of the 674 MAOs identified by CMS are potential class members.

15.    Significantly, Plaintiff's putative class of MAOs seeking repayment for alleged obligations under "Florida no-fault law (section 627.736(4), Florida Statutes)" ("Florida PIP"), Compl. ¶ 27, is not necessarily limited to MAOs located in Florida.  Indeed, Plaintiff's class definition does not include any geographic limitation on the referenced MAO class members. MAOs nationwide are required to pay for emergency and urgently needed services "[r]egardless of whether the services are obtained within or outside the [MAO]."   42 C.F.R. § 422.113(b)(2)(i).  Thus, each of the 674 MAOs would be required to pay for emergency or urgently needed services if an enrollee was injured in Florida and required that medically necessary services be provided immediately.  *See id.* § 422.113(b)(1)(iii).

16.    Furthermore, enrollees in MAOs both inside and outside of Florida could be eligible for the Florida PIP benefits referenced in Plaintiff's class definition.  First, the Florida PIP statute requires personal injury protection coverage for non-residents with vehicles present in the state for more than ninety days, which could include individual beneficiaries of MAOs outside of Florida.  *See* Fla. Stat. Ann. § 627.733(2).[3]  Second, the Florida PIP statute extends Florida PIP benefits of up to $10,000 to permissive users, passengers, and persons struck by an insured vehicle, which also could include individual beneficiaries of MAOs outside of Florida. *See id.* § 627.736(1).[4]

---

[3] Florida Statute § 627.733(2) provides as follows:  "Every nonresident owner or registrant of a motor vehicle which, whether operated or not, has been physically present within this state for more than 90 days during the preceding 365 days shall thereafter maintain security as defined by subsection (3) in effect continuously throughout the period such motor vehicle remains within this state."

[4] Florida Statute § 627.736(1) provides as follows:  "An insurance policy complying with the security requirements of [§] 627.733 must provide personal injury protection to the named insured, relatives residing in the same household, persons operating the insured motor vehicle, passengers in the motor vehicle, and other persons struck by the motor vehicle and suffering bodily injury . . . to a limit of $10,000 in medical and disability benefits . . . ."

17.     A study published by The Gerontological Society of America illustrates that there are many individuals over the age of 65 who maintain only seasonal residency in Florida and their permanent residence in another state.  *See* Stanley K. Smith & Mark House, *Snowbirds, Sunbirds, and Stayers: Seasonal Migration of Elderly Adults in Florida*, 61B BUREAU OF ECONOMIC AND BUSINESS RESEARCH, JOURNAL OF GERONTOLOGY: SOCIAL SCIENCES S232 (2006).   Based just on the survey conducted of Florida households each month between September 2000 and December 2003, the study estimated that, between late summer and "peak snow bird season" (defined as January and February), there were between 30,000 and 698,000 "snowbirds" in Florida, of which 72.2% (or between 21,660 and 503,956) were over the age of 65.  *See id*. at S233, S235.  The researchers defined "snowbirds" as non-residents of Florida who spend more than one month in Florida, but maintained their primary residence elsewhere.  *See id*. at S233.  These high numbers of Medicare eligible individuals who maintain only a seasonal residence in Florida and a permanent residence elsewhere readily show that there could be over 100 out-of-state MAOs that provide benefits to Medicare enrollees that are also covered by the Florida PIP statute referenced in Plaintiff's class definition.

18.     Accordingly, on its face, Plaintiff's putative class potentially includes the 674 MAOs throughout the United States that "contracted directly with CMS and/or its assignee pursuant to Medicare Part C."  Compl. ¶ 27.

19.     In addition, based on Plaintiff's class definition, the putative class could also include entities beyond just those 674 MAOs.  Specifically, Plaintiff's defined class includes, in addition to MAOs, entities that are described by Plaintiff as "*other similar entities*" that "contracted directly with CMS and/or its assignee pursuant to Medicare Part C . . . to provide Medicare benefits through a Medicare Advantage plan to Medicare beneficiaries for medical

113223869.1

services, treatment, and/or supplies as required and regulated by CMS and HHS." *Id.* (emphasis added). Finally, Plaintiff's putative class definition also includes additional entities beyond just MAOs and "other similar entities." *Id.* In particular, Plaintiff's defined class also includes "assignees" of the referenced MAOs and "other similar entities." *Id.* Thus, it is clear that Plaintiff has defined a putative class consisting of more than one hundred members.

20.     Plaintiff's conclusory statement, averred "upon information and belief," that the putative class is "comprised of more than twenty-five (25) but less than fifty (50) entries [sic] or their assignees," Compl. ¶ 26, need not be accepted by this Court. This is especially true where, as here, it is reasonable to conclude that far more entities—including MAOs inside and outside Florida, "other similar entities," and "assignees"—may have made the payments described and are therefore within the putative class based on the relevant statutory framework, including the Florida PIP requirements and 42 C.F.R. § 422.113(b)(2)(i). *See Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 869 (9th Cir. 2013) (disregarding as "inaccurate" the plaintiff's argument that the allegations in the initial complaint only alleged "ninety-five 'real' state-court plaintiffs" in finding that the action satisfied CAFA's numerosity requirement); *Powell v. Huntington Nat'l Bank*, No. 13 Civ. 32179, 2014 WL 4809729, at *6 (S.D. W.Va. Sept. 26, 2014) (confirming jurisdiction under CAFA where, among other things, "Defendant plausibly alleges that the putative class exceeds 100 members").

21.     In short, Plaintiff worded its class definition in a very broad manner sweeping in (i) all 674 MAOs throughout the nation that could have provided benefits to its enrollees that are also covered under the Florida PIP statutes, (ii) "other similar entities," and (iii) "assignees" of those entities. Compl. ¶ 27. Having chosen to define its class so broadly, Plaintiff cannot rely on its unsupported conclusory assertion that its class consists of only 25 to 50 members in an

8

effort to defeat federal jurisdiction.

22.     Even assuming *arguendo* that Plaintiff's class definition is limited to MAOs that operate in Florida, the putative class would still consist of more than 100 members because, according to CMS data published in September 2017 detailing Medicare Advantage contract service areas, there are 106 entities that contract with CMS to provide Medicare Advantage plans in Florida.  *See* Exhibit D.[5]

23.     Thus, although AIGPCC does not concede the propriety or breadth of the class as alleged by Plaintiff, Plaintiff's own class definition makes clear that the putative class consists of more than 100 members.

### C.     CAFA's Amount-In-Controversy Requirement Is Satisfied

24.     Under CAFA, the claims of the individual class members are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest or costs.  *See* 28 U.S.C. § 1332(d)(6).  The amount in controversy is not "the amount the plaintiff will recover," but rather "an estimate of the amount that will be put at issue in the course of the litigation." *Dudley*, 778 F.3d at 913 (citing *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 751 (11th Cir. 2010)).  Further, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart*, 135 S. Ct. at 554; *see also Pretka*, 608 F.3d at 754 ("[A] removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it.").

25.     Significantly, Plaintiff's Complaint does not identify (i) the entities from which it allegedly has received assignments, (ii) any of the claims for which it seeks to recover, or (iii)

---

[5] The information in the attached exhibit has been formatted to include only information that is relevant to the number of MAOs offering Medicare Advantage plans in Florida in order to streamline the printed version.  A full and complete version of Exhibit D is available at https://www.cms.gov/Research-Statistics-Data-and-Systems/Statistics-Trends-and-Reports/MCRAdvPartDEnrolData/MA-Contract-Service-Area-by-State-County-Items/MA-Contract-Service-Area-2017-09.html?DLPage=1&DLEntries=10&DLSort=1&DLSortDir=descending.

the purported class period.  Nevertheless, although AIGPCC believes that it will establish that it does not have any liability to Plaintiff or any putative class member, it is clear from Plaintiff's Complaint and class definition that the amount in controversy that Plaintiff seeks to recover exceeds $5,000,000, as demonstrated below.

26.     Specifically, Plaintiff's allegations relate to benefits that were paid by MAOs to Medicare beneficiaries that were "simultaneously covered by no-fault insurance policies issued by Defendant," Compl. ¶ 5, which provide up to $10,000 in benefits.  *See id.* ¶ 8.  Plaintiff also alleges that, based on its review of unidentified "claims data," "[AIGPCC]'s failure to pay for claims as a primary payer is widespread and systematic [and AIGPCC] has a practice and course of conduct to not properly pay and/or fail to reimburse the secondary payer, such as Plaintiff and the Class Members."  *Id.* ¶ 20.

27.     In addition, Plaintiff's counsel has repeatedly argued in similar lawsuits that allege similar legal claims and theories of recovery that there are "thousands, and at times tens of thousands of instances" where MAOs like those in Plaintiff's proposed class are allegedly owed reimbursement from no-fault insurers.  Plaintiff's Motion for Conditional Class Certification, *MSPA Claims 1, LLC v. Ocean Harbor Cas. Ins. Corp.*, No. 2015-1946-CA-01 (Dec. 23, 2015) at 10, attached hereto as Exhibit E; *see also* Plaintiff's Reply to Defendant's Response in Opposition to Plaintiff's Motion for Certification, *MSPA Claims 1, LLC v. Ocean Harbor Cas. Ins.*, No. 2015- 1946-CA-01 (Sept. 7, 2016) at 17-18 (arguing that MAOs in the putative class "may have dozens, hundreds, thousands, or even tens of thousands of instances in which Defendant has failed to provide primary payment, in violation of Section 627.736, Florida Statutes and/or reimburse the MAO"), attached hereto as Exhibit F.

28.     Indeed, if each putative class member had just one claim, simple multiplication of

the number of MAO class members alone (674) by the maximum amount for a single claim ($10,000) demonstrates that the purported amount in controversy easily reaches $6,740,000, well above the $5,000,000 threshold for CAFA.[6]   In light of Plaintiff's allegation that AIGPCC's failure to fulfill its obligations as a primary payer was "widespread and systematic," it is reasonable to conclude that the amount in controversy is significantly higher based on each MAO class member having paid out more than one single claim.  *See Cappuccitti v. DirecTV, Inc.*, 623 F.3d 1118, 1122 n. 7 (11th Cir. 2010) (using "simple arithmetic" to conclude that the allegations satisfy CAFA's jurisdictional requirements); *South Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1318 (11th Cir. 2014) ("Although members of the putative class might not ultimately recover the full $68,176,817.69, that possibility does not shut the door on federal jurisdiction.  As we have said before, the pertinent question [at the jurisdictional stage] is what is *in controversy* in the case, not how much the plaintiffs are ultimately likely to recover.") (emphasis and alteration in original, citations and internal quotation omitted).[7]

29.     Thus, Plaintiff's allegations demonstrate that the aggregated value of the "claims of the individual class members . . . exceed the sum or value of $5,000,000.00."  28 U.S.C. § 1332(d)(2).

**D.     None of CAFA's Exceptions Apply**

30.     CAFA provides two mandatory exceptions and one discretionary exception to the

---

[6] Further, as demonstrated above, Plaintiff's class definition sweeps in "other similar entities," as well as "assignees," in addition to MAOs.  As a result, there could be far more claims beyond the conservative estimate of one $10,000 claim per each of the 674 MAOs, which brings the potential amount in controversy to well over $6,740,000.

[7] This Notice of Removal discusses the nature and amount of damages placed at issue by Plaintiff's Complaint and putative class definition.  References to specific damage amounts are provided solely for the purpose of establishing that the alleged amount in controversy satisfies the jurisdictional minimum imposed by CAFA.  AIGPCC maintains that Plaintiff's claims are without merit and that AIGPCC is not liable to Plaintiff or any other putative class member. No statement or reference contained herein shall constitute an admission of liability or a suggestion that Plaintiff or any other putative class member will or could actually recover these damages—or any damages—based upon the allegations in the Complaint or otherwise.

113223869.1

application of federal jurisdiction, all of which require that the primary defendants are citizens of the state where the action is originally filed. *See* 28 U.S.C. § 1332(d)(3)-(4). None of those exceptions apply here because AIGPCC, the only named defendant, is a citizen of Pennsylvania and New York—not Florida. *See id.* § 1332(c)(1); Exhibit B.

## II.    THIS COURT ALSO HAS JURISDICTION PURSUANT TO TRADITIONAL DIVERSITY PRINCIPLES

31.    This Court also has jurisdiction over this action under traditional diversity principles pursuant to 28 U.S.C. §§ 1332 and 1367.

### A.    There is Complete Diversity Between Plaintiff and Defendant

32.    AIGPCC alleges in good faith that there is complete diversity of citizenship between Plaintiff and AIGPCC. Plaintiff is alleged to be a Delaware LLC with its principal place of business in Miami, Florida. *See* Compl. ¶ 9. AIGPCC is alleged to be and is a foreign corporation, and is in fact incorporated in Pennsylvania with its principal place of business in New York. *See* Exhibit B.

33.    Generally, the party seeking to establish diversity must list the citizenships of all members of an LLC to establish that diversity exists. *See, e.g., Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004) ("a limited liability company is a citizen of any state of which a member of the company is a citizen. . . . To sufficiently allege the citizenships of these unincorporated business entities, a party must list the citizenships of all the members of the limited liability company and all the partners of the limited partnership."). However, this rule is relaxed where, as here, a party is unable to determine the citizenship of a limited liability corporation's members through reasonable investigation. *See, e.g., Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 110 (3d Cir. 2015) (stating that "a plaintiff need not affirmatively allege the citizenship of each member of a defendant LLC if it is

12

unable to do so after a reasonable investigation.  If the plaintiff is able to allege in good faith that the LLC's members are not citizens of its state of citizenship, its complaint will survive a facial challenge").

34.     Here, Plaintiff, MSP Recovery Claims, Series LLC, is alleged to be a Delaware entity.  However, the Delaware Secretary of State website lists only minimal information regarding MSP Recovery Claims, Series LLC—namely, the name, entity type, and formation date.  *See* Exhibit G.  In a similar case filed by Plaintiff against Safeco Insurance Company of America, Plaintiff filed a corporate disclosure statement that indicates that the sole member of Plaintiff is another LLC called "Series MRCS, LLC."  *See* Exhibit H.  AIGPCC has not, after reasonable investigation, been able to locate any information identifying the members of Series MRCS, LLC.[8]

35.     Further, there exists no basis to believe that any members of Series MRCS, LLC is a citizen of Pennsylvania or New York—the states of which Defendant is a citizen.  For example, an interrogatory response from a similar plaintiff LLC in one of the many similar cases brought by Plaintiff's counsel, *MSPA Claims 1, LLC v. Allstate Prop. & Cas. Ins. Co.*, No. 17-cv-20782-DPG (S.D. Fla.), states that family members of Plaintiff's Florida counsel (John H. Ruiz, Jr., John Ruiz's son, and Diane Lista, Frank C. Quesada's daughter), all of which AIGPCC reasonably believes are Florida citizens, have an ownership interest in MSP Recovery Services, LLC, which is identified as the parent company of the plaintiff in that case, MSPA Claims 1, LLC.  *See* Exhibit I.  The Florida Department of State's website lists MSP Recovery Services,

---

[8] AIGPCC searched the Florida Secretary of State's website, Capital IQ, Bloomberg Law, Dun and Bradstreet, and Westlaw Company registrations databases for Series MRCS, LLC and MSP Recovery Claims Series, LLC, but was unable to find any information about these entities sufficient to identify each LLC's members for purposes of definitively evaluating diversity.

LLC as a Florida entity with a Florida address identical to that of Plaintiff and Plaintiff's counsel here.  *Compare* Compl. ¶ 9 *with* Exhibit J. Additionally, a March 6, 2015 "LC Amendment" for MSP Recovery Services, LLC, appearing on the same website, lists the same Florida address for John H. Ruiz, Jr.  *See* Exhibit K.  Similarly, the Florida Department of State's website identifies MSPA Claims 1, LLC with the same Florida address as that of MSP Recovery Services, LLC, Plaintiff's counsel, and Plaintiff's counsel's son.  *See* Exhibit L.

36.     Based on the foregoing information, AIGPCC reasonably believes that the members of Plaintiff's member LLC are citizens of Florida, and has absolutely no reason to believe they are citizens of Pennsylvania or New York, which are Defendant's states of citizenship.   This is sufficient, as in the above cases, to satisfy the complete diversity requirement.

37.     At a minimum, if there is any question on this issue, the Court should allow limited jurisdictional discovery.  *See, e.g., CSDVRS, LLC v. Purple Commc'ns, Inc.,* No. 8:13-CV-1811-T-30AEP, 2013 WL 4763948, *1 (M.D. Fla. Sept. 4, 2013) (allowing such jurisdictional discovery).   The only discovery needed is a single interrogatory to resolve the question of the identity and citizenship of the members of the LLC that constitutes the sole member of Plaintiff, which certainly can be no burden to Plaintiff.

**B.     Plaintiff's Aggregate Claim Exceeds $75,000 Based on the Complaint's Allegations**

38.     In addition, Plaintiff's individual claim meets Section 1332(a)'s $75,000 amount-in-controversy requirement and, therefore, this Court has supplemental jurisdiction over the entire putative class under 28 U.S.C. § 1367.  *See Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 549 (2005) (where one of the named plaintiffs in the alleged class action satisfies

the amount-in-controversy requirement, 28 U.S.C. § 1367 authorizes supplemental jurisdiction over the claims of the other plaintiffs).

39.     A removing defendant need only assert a plausible allegation that the threshold amount in controversy has been met and, only if the plaintiff challenges the allegation, must the moving defendant establish the amount in controversy requirement by a preponderance of the evidence. *See Stavrakis v. Underwriters at Lloyd's London,* No. 8:16-CV-2343-T-17JSS, 2016 WL 9211676, *2 (M.D. Fla. Dec. 20, 2016). In addition, a removing defendant may establish the amount in controversy requirement based on estimates premised on the plaintiff's alleged damages. *See Wineberger v. RaceTrac Petroleum, Inc.,* 672 F. App'x 914, 917 (11th Cir. 2016) (holding that a district court is allowed to estimate potential damages based on reasonable deductions and inferences from plaintiffs' allegations). Moreover, the standard for assessing the amount in controversy is not what a plaintiff *will* recover, but instead what it plausibly *could* recover based on the amount put at issue by the complaint. *See, e.g., Scott v. Cricket Commc'ns, LLC,* 865 F.3d 189, 196 (4th Cir. 2017) ("The key inquiry in determining whether the amount-in-controversy requirement is met is not what the plaintiff will actually recover but an estimate of the amount that will be put at issue in the course of the litigation.") (citation and internal quotation omitted).

40.     Although Plaintiff does not set forth a specific amount of damages, the allegations demonstrate that it is reasonable to estimate that there is in fact more than $75,000 in controversy on Plaintiff's claims despite Plaintiff's conclusory allegation to the contrary.[9] Plaintiff alleges

---

[9] As noted above, AIGPCC discusses in this Notice of Removal the amount of damages placed at issue by Plaintiff's Complaint, and references to specific damage amounts are provided solely for the purpose of establishing that the alleged amount in controversy satisfies the jurisdictional minimum imposed by 28 U.S.C. § 1332. AIGPCC maintains that Plaintiff's claims are without merit and that AIGPCC is not liable to Plaintiff or any other putative class member. No statement or reference contained herein shall constitute an admission of liability or a suggestion that Plaintiff or any other putative class member will or could actually recover these damages—or any damages—based upon the allegations in the Complaint or otherwise.

113223869.1

that "*[n]umerous* Medicare beneficiaries . . . were enrolled in Medicare Advantage plains administered by MAOs [which] have assigned their recovery rights to Plaintiff." Compl. ¶ 15 (emphasis added). Plaintiff further alleges that it is the assignee of "*numerous* MAOs," and that the individual recovery for each claim is potentially $10,000. *See id.* ¶¶ 8, 9 (emphasis added). "Numerous" is defined as "consisting of great numbers of units or individuals," MERRIAM WEBSTER DICTIONARY: NUMEROUS, *https://www.merriam-webster.com/dictionary/numerous* (last visited Oct. 31, 2017), and courts have used the term "numerous" to refer to things that number *at least* eight or ten.[10] Because each claim has a potential value of $10,000, Plaintiff would only need to have been assigned eight individual claims to exceed the $75,000 minimum required for diversity jurisdiction. Based on Plaintiff's express allegation that it is pursuing "numerous" claims individually, it is reasonable to conclude that the amount in controversy exceeds $75,000.[11]

41.     Additionally, the Eleventh Circuit has indicated that a plaintiff's assertion that its damages will not exceed a certain amount, without specifying the types of damages or factoring in items such as attorneys' fees, is insufficient to establish that the amount in controversy is less than $75,000. *Wineberger*, 672 F. App'x at 917 (affirming denial of motion to remand and noting that "[a]lthough she claimed that damages would not exceed $65,000, Ms. Wineberger did not factor in attorney's fees or specify the type of damages that her calculations included. Thus, the district court concluded that she had not properly stipulated to an amount less than

---

[10] *See, e.g., Lowe v. Consol. Freightways of Delaware, Inc.*, 177 F.3d 640, 641 (7th Cir. 1999) (referring to "numerous" as "at least 8 or 10"); *United States v. T.C.A., Inc.*, No. C-95-1627-JLQ, 1997 WL 542683, *1 (N.D. Cal. Aug. 25, 1997), as amended (Sept. 2, 1997) ("The court has already found that the Defendants violated the Fair Debt Collections Act on *numerous (more than 10)* occasions.") (emphasis added).

[11] It should be noted that Plaintiff does not allege that it will reject damages in excess of $75,000, and thus Plaintiff has not categorically disclaimed such damages. *See, e.g., Geodesic Consulting, LLC v. BBVA USA Bancshares, Inc.*, No. 2:15-CV-1225-WMA, 2015 WL 4985474, at *2 (N.D. Ala. Aug. 20, 2015) ("Because Geodesic has not disclaimed entitlement to any amount over $74,999.99, its motion to remand (Doc. 4) is DENIED.").

$75,000.").  Here, Plaintiff alleges only that its aggregate claims against AIGPCC do not exceed $75,000.  *See* Compl. ¶ 8.  Plaintiff does not stipulate that it will not seek damages in excess of $75,000 or disclaim entitlement to any amount over $75,000.  Nor does Plaintiff factor attorneys' fees into the less than $75,000 in "claims" to which it refers, even though Plaintiff's Complaint expressly seeks attorneys' fees.  *See* Compl. at p. 16 ("Wherefore" clause).[12]  In addition, Plaintiff fails to specify the type of damages included in this calculation.  As such, Plaintiff has not effectively alleged or established an amount in controversy less than $75,000 for its individual claim.

## III.    THIS COURT ALSO HAS FEDERAL QUESTION JURISDICTION

42.    Finally, this Court also has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.

43.    Under 28 U.S.C. § 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  A plaintiff may not avoid removal by framing claims in terms of state law, where the real nature of the claim is federal.  *See Marcus v. AT&T Corp.,* 138 F.3d 46, 55 (2d Cir. 1998).  "A case 'aris[es] under' federal law within the meaning of § 1331 . . . if 'a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'"  *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 689-90 (2006) (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 27-28 (1983)).  Even where a plaintiff has couched its complaint completely in terms of state law, a federal court has jurisdiction where a

---

[12] Although AIGPCC does not believe that attorneys' fees are available in this case, they are alleged by Plaintiff and therefore are properly considered as part of the amount in controversy.  *See, e.g., E.S.Y., Inc. v. Scottsdale Ins. Co.,* 217 F. Supp. 3d 1356, 1362 (S.D. Fla. 2015) (where, as here, attorneys' fees "are sought pursuant to statute, the Court may properly consider them in the amount-in-controversy inquiry").

federal issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)).[13]

44.     "The existence of federal jurisdiction is tested as of the time of removal." *Ehlen Floor Covering, Inc. v. Lamb*, 660 F.3d 1283, 1287 (11th Cir. 2011).  This Court must look only to "plaintiff['s] original complain[t] entered at the time of removal," and subsequent amendments may not defeat removal. *Id.*

45.     It is clear from the face of Plaintiff's Complaint that the asserted claims against AIGPCC raise substantial questions of federal law that will be dispositive of the case.  Indeed, Plaintiff expressly alleges in the very first paragraph of its Complaint that its claims hinge on federal law: "Defendant *failed to fulfill its statutorily-mandated duty under the Medicare Secondary Payer . . . laws* to reimburse [MAOs] for medical treatments or expenses paid by Plaintiff and the putative Class Members . . . on behalf of Medicare beneficiaries."  Compl. ¶ 1 (emphasis added).  Further, in identifying questions that purportedly are common to the putative class, Plaintiff alleges that its claims raise the question of whether "federal law preempts state

---

[13] A federal issue is "necessarily raised" (prong 1) "when a well-pleaded complaint establishes either that federal [] law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal [] law, in that [federal] law is a necessary element of one of the well-pleaded claims." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808 (1988).  A federal issue is "actually disputed" (prong 2) when it "really and substantially involv[es] a dispute or controversy respecting the validity, construction or effect of [federal] law." *Allergan, Inc. v. Ferrum Ferro Capital, LLC*, 2015 WL 12670417, at *4 (C.D. Cal. 2015) (citing *Grable*, 545 U.S. at 313).  Whether the federal issue is "substantial" (prong 3) is determined by looking at "the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260.  A nominal state-law claim "raise[s] substantial questions of federal law" where the application of federal law is "an essential element" of the cause of action, "such that the claim will be supported if the federal law is given one construction or effect and defeated if it is given another." *Dunlap v. G&L Holding Grp. Inc.*, 381 F.3d 1285, 1290 (11th Cir. 2004) (quoting *Mobil Oil Corp. v. Coastal Petroleum Co.*, 671 F.2d 419, 422 (11th Cir. 1982)).  That is, federal jurisdiction is proper where the result depends on the resolution of "a dispute or controversy respecting the validity, construction, or effect" of federal law. *Id.* (quoting *Mobil Oil*, 671 F.2d at 422).  Finally, a federal issue is "capable of resolution in federal court without disrupting the federal-state balance approved by Congress" (prong 4) when the state does not have a "particularly strong interest in deciding the issue underlying the dispute." *Thurston v. Chino Commercial Bank, N.A.*, No. CV 17-01078, 2017 WL 3224681, at *6 (citing *Gunn*, 568 U.S. at 264).

law and/or any defenses [AIGPCC] might raise." *Id.* ¶ 33(e).   Even Plaintiff's class definition
relies on federal law, as it requires a determination of who has a right to recovery under the
Medicare Secondary Payer Act ("MSP Act"), by identifying as class members MAOs that have
"the direct right and responsibility to collect for covered Medicare services," and states that
"[e]ach class member, including Plaintiff, possess the same rights to obtain recovery of its
payments under the MSP law." *Id.* ¶¶ 27, 30.

46.     More specifically, Plaintiff's first cause of action, although entitled "Breach of
Contract for Failure to Pay PIP Benefits," in fact raises a substantial question of federal law
under the MSP Act, 42 U.S.C. § 1395y, and its implementing regulations.   Plaintiff specifically
relies on the MSP Act for its theory of recovery.   Indeed, Count I alleges that Plaintiff seeks
recovery "for Defendant's breach of contract with their insured, *pursuant to the MSP
provisions*," and states that "*[u]nder the MSP provisions*, Plaintiff is subrogated to the
enrollee/insured's right of action against Defendant."[14]  Compl. ¶ 52 (emphasis added).   Under
the referenced MSP provisions, the United States is entitled to be subrogated to a Medicare
beneficiary's right to recover against their insurance companies.   *See* 42 U.S.C.
§ 1395y(b)(2)(B)(iv); 42 C.F.R. § 411.26(a).   Plaintiff will only be entitled to recovery if the
same provisions also entitle MAOs (and by extension, Plaintiff as an assignee) to be subrogated

---

[14] Although other courts in this district have remanded actions asserting claims arising under Florida Statutes
§ 627.736, which governs the provision of Florida PIP benefits, Plaintiff's Complaint here does not depend solely on
the Florida PIP statute.   Rather, in stark contrast to those other actions, Plaintiff here relies on federal law to
establish its entitlement to sue for breach of a contract to which it is not a party, and federal law will have to be
interpreted and applied in order to resolve Plaintiff's claims.   *Compare* Compl. ¶¶ 52-56 (alleging that "Defendant
was *contractually* obligated to pay for medical expenses" and that under the MSP Act, Plaintiff is entitled to sue for
such a breach) (emphasis added) *with, e.g.*, *MSPA Claims 1, LLC v. Allstate Prop. & Cas. Ins. Co.*, No. 16-20443-
Civ-Scola, 2016 WL 4370078, at *2, 5 (S.D. Fla. June 30, 2016) (finding no federal jurisdiction where "[a]ll four
counts recite, identically, that 'Defendant failed and/or refused to make complete payments of the No-fault benefits
as required by Section 627.736, Florida Statutes" and that the trier of fact would not have to "apply or decide any
federal issues to resolve [plaintiff's] asserted state-law claims."); *MSPA Claims 1 v. Liberty Mut. Fire Ins. Co.*, No.
16-20271-CIV-GAYLES/TURNOFF, 2016 WL 3751481, at *3 (S.D. Fla. July 14, 2016) ("Plaintiff alleges that its
right to reimbursement is based on Florida Statute § 627.736.").

to their member's right to recover against their insurance company.  Significantly, it is not clearly established whether MAOs in fact may exercise the same rights as the United States.  Indeed, 42 U.S.C. § 1395y makes no reference to MAOs, and 42 C.F.R. § 411.26(a) makes explicit reference to "CMS" but not to MAOs.  As a result, in adjudicating Plaintiff's Count I, this Court will be required to interpret federal law—namely, 42 U.S.C. § 1395y and 42 C.F.R § 411.26(a)—to determine whether MAOs are allowed to subrogate claims against AIGPCC.  Plaintiff's "claim will be supported if the federal law is given one construction or effect and defeated if it is given another."  *Dunlap*, 381 F.3d at 1290.

47.    In short, Plaintiff's ability to recover under Count I necessarily will depend on the Court's application and interpretation of 42 U.S.C. § 1395y and MSP Act implementing regulations and, thus, this count raises a federal question.  Plaintiff is not an AIGPCC policy holder; rather, Plaintiff alleges that it is an assignee of numerous MAOs that allegedly paid for medical services provided to Medicare beneficiaries who were insured by AIGPCC.  Count I alleges that AIGPCC breached its contract with its policyholders by failing to "make complete payments of the no-fault benefits as required by [AIGPCC's] contractual obligations."  Compl. ¶ 54.   Plaintiff goes on to state that the regulations implementing 42 U.S.C. § 1395y give the MAO the right to sue on the policyholder's behalf to recover payments that the MAO made that AIGPCC was contractually obligated to make.  *Id*. ¶ 52.  Specifically, Count I alleges that AIGPCC "was contractually obligated to pay for medical expenses and items arising out of an automobile accident"; that it "failed to meet that obligation"; that the "obligation was, instead, fulfilled by the . . . [MAO] and other Class Members."  *Id*.  Count I then concludes by alleging that as a result, "[u]nder the MSP provisions" of 42 U.S.C. § 1395y, "Plaintiff is permitted to subrogate the enrollee/insured's right of action against Defendant."  *Id*.  Thus, Plaintiff's entire

entitlement to pursue Count I—let alone recover—turns on the application and interpretation of federal law, namely the MSP Act and its implementing regulations.

48.     In sum, the interpretation and application of federal law will play a substantial role in determining whether Plaintiff may recover in the place of AIGPCC insureds.  Put another way, Plaintiff is unable to recover from AIGPCC under Count I unless, among other things, (i) the MSP Act required AIGPCC to reimburse Medicare for the alleged payments made; and (ii) the MSP Act permitted the referenced MAO to collect the reimbursement owed by AIGPCC to Medicare.

49.     It should be noted that only two months before filing this action, Plaintiff's counsel represented to a court in this District that it had federal question jurisdiction over a cause of action identical in all material respects to Count I of this action.  *See* Compl, *MAO-MSO Recovery II v. USAA Cas. Ins. Co.*, 1:17-cv-20946-JAL, Dkt. 36 ¶ 8 (the "*USAA* Action"), Exhibit M.  The only difference between Count I of this action and Count II in the *USAA* Action is that Plaintiff in this action removed a reference to a section of the MSP Act's implementing regulation, namely "42 C.F.R. § 411.26."  *Compare* Compl. ¶ 52 *with USAA* Action Compl. ¶ 82, Exhibit M.  This stylistic change does not affect federal jurisdiction.  *See Franchise Tax Bd.*, 463 U.S. at 22 ("It is an independent corollary of the well-pleaded complaint rule that a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint.").  Additionally, in the *USAA* Action, the plaintiffs—who, like Plaintiff here, are purported assignees of MAOs—argued that they could exercise the "same rights to recover" as the United States pursuant to a different federal rule, 42 C.F.R. § 422.108(f).  *See USAA* Action Compl. ¶ 25, Exhibit M.

113223869.1

50.     Count I of Plaintiff's Complaint therefore "arises under" federal law and this Court has jurisdiction to resolve it.

51.     Whether Plaintiff can prevail on Counts II and III also will depend on this Court's interpretation of the MSP Act and AIGPCC's obligations under that federal law to reimburse the United States, or the MAOs, or the assignees of the MAOs.  For example, Count II alleges that Plaintiff and the putative class members have subrogation and reimbursement rights pursuant to the MAO's "Evidence of Coverage," Compl. ¶ 59, which is a Medicare form setting forth coverage provided by MAOs, and the referenced reimbursement rights are those provided under the MSP Act.  Further, Counts II and III, like Count I, are premised on Plaintiff's allegations regarding, among other things, (i) AIGPCC's purported failure to fulfill duties of reimbursement under the MSP Act, *see* Comp. ¶ 1; (ii) questions purportedly common to the putative class regarding whether federal law preempts state law and/or any defenses AIGPCC may raise, *see id.* ¶ 33(e); and (iii) class members identified based on their purported rights to reimbursement under the MSP Act, *see id.* ¶ 27.  Thus, the interpretation, analysis, and application of federal law will also be required in order to resolve Counts II and III, and federal question jurisdiction exists.

52.     Even if this Court concludes that Counts II and III do not necessarily involve substantial questions of federal law, the Court has supplemental jurisdiction over those counts because all of Plaintiff's claims arise from AIGPCC's alleged failure to pay benefits allegedly owed by AIGPCC for bills which the MAO was allegedly required to pay.  Accordingly, all claims are "so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy."  *See* 28 U.S.C.A. § 1367.

### PROCEDURAL REQUIREMENTS

53.     Removal is timely pursuant to 28 U.S.C. § 1446(b) because this Notice of

Removal was filed within thirty days of service on AIGPCC of the Complaint.

54.     Pursuant to 28 U.S.C. § 1446(d), AIGPCC will promptly serve a copy of this Notice of Removal on counsel for Plaintiff and will file a copy of this Notice of Removal with the clerk of the state court.

## RESERVATION OF DEFENSES

55.     As of the filing of this Notice of Removal, no further proceedings have been had in the state court action.

56.     Nothing in this Notice of Removal shall be interpreted as a relinquishment of AIGPCC's right to assert any defense or affirmative matter.

57.     The parties have stipulated that AIGPCC's response to the Complaint is due on November 27, 2017.

58.     AIGPCC reserves the right to amend or supplement this Notice of Removal.

WHEREFORE, Defendant AIG Property Casualty Company respectfully requests that this action, pending in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, be removed to this Court pursuant to 28 U.S.C. §§ 1331, 1332, 1367, 1441, and 1446, and that this Court proceed as if this case has been initiated in this Court.

DATED:  November 1, 2017

Respectfully Submitted,

_/s/ Benjamine Reid_____
Benjamine Reid
Florida Bar No. 183522
CARLTON FIELDS JORDEN BURT, P.A.
100 Southeast Second Street
Suite 4200
Miami, Florida 33131-9101
Telephone: (305) 530-0050
Facsimile: (305) 530-OO55
breid@carltonfields.com

Suzanne Jaffe Bloom (*pro hac vice application to be filed*)

Jeffrey J. Amato (*pro hac vice application to be filed*)

Benjamin Sokoly (*pro hac vice application to be filed*)

Mollie  C.  Richardson  (*pro  hac  vice application to be filed*)

Cristina  M.  Fernandez  (*pro  hac  vice*

*application to be filed*)

| | |
|---|---|
| D. Matthew Allen | WINSTON & STRAWN LLP |
| Florida Bar No. 866326 | 200 Park Avenue |
| CARLTON FIELDS JORDEN BURT, P.A. | New York, NY  10166-4193 |
| Corporate Center Three | Telephone: (212) 294-6700 |
|   at International Plaza | Facsimile: (212) 294-4700 |
| 4221 W. Boy Scout Boulevard | sbloom@winston.com |
| Suite 1000 | jamato@winston.com |
| Tampa, FL 33607 | bsokoly@winston.com |
| Telephone: (813) 223-7000 | mrichardson@winston.com |
| Facsimile: (813) 229-4133 | cfernandez@winston.com |
| mallen@carltonfields.com | |

**Attorneys for Defendant AIG Property Casualty Company**

**<u>CERTIFICATE OF SERVICE</u>**

     I HEREBY CERTIFY that on November 1, 2017, a copy of the foregoing was served on

the following counsel of record via U.S. Mail:

John H. Ruiz Esq.
MSP Recovery Law Firm
5000 SW 75 Avenue
Suite 400
Miami, FL  33155
**Attorney for Plaintiff**

                              */s/ D. Matthew Allen*
                                Attorney

113223869.1